A97A2531. CRISP COUNTY SCHOOL DISTRICT et al. v. PHEIL
et al.
(498 SE2d 134)

SMITH, Judge.

This interlocutory appeal involves a claim under the Federal Rehabilitation Act of 1973, 29 USC § 794, arising out of the sudden collapse and death of Jessica Pheil from a pulmonary embolism, approximately one week after she fell on a staircase at Crisp County High School. Her parents brought this action against the Crisp County School District, the Crisp County Board of Education, and four individuals who had served as superintendent of schools or principal of the high school. Their claims were based in negligence and nuisance, alleging that defendants removed a handrail from the staircase, failed to allow the students sufficient time to change classes, and violated the Rehabilitation Act by failing to accommodate Jessica's disability.

Defendants moved for summary judgment, asserting among other grounds that sovereign and official immunity act as a complete bar to the Pheils' claims against the school district and the individuals sued in their official capacity. In opposition to the motion, the Pheils did not respond directly to defendants' contentions but relied entirely on the Rehabilitation Act, apparently contending that state immunity is inapplicable to such claims. The trial court denied summary judgment, finding genuine issues of fact as to whether Jessica's alleged disability contributed to her death and whether defendants failed to comply with the Rehabilitation Act. The trial court also found that OCGA § 51-1-20 does not provide sovereign immunity for claims under the Act. We do not reach the latter issue because the Pheils have failed to show the essential elements of a claim under the Act. The trial court therefore erred in denying defendants' motion for summary judgment, and we reverse.

The tragic events of this case began on Thursday, December 5, 1991, when Jessica Pheil fell on a staircase at Crisp County High School and suffered bruises to her legs. She was treated by her doctor, was released to return to school the following Monday, and attended school during the following week. But on the evening of Friday, December 12, she suddenly collapsed and died at home of a pulmonary embolism, allegedly caused by the fall one week earlier. The Pheils contend the fall was caused by the absence of a handrail and by the school's decision to allow students only five minutes to change

classes, forcing them to hurry and bump one another in the halls.

1. It is well established that, in the absence of some special circumstance, claims against a public school district and its officials in their official capacity are barred by sovereign immunity. Ga. Const. of 1983, Art. I, Sec. II, Par. IX; *Hennessy v. Webb*, 245 Ga. 329 (264 SE2d 878) (1981); *Holloway v. Dougherty County School Sys.*, 157 Ga. App. 251, 252-253 (277 SE2d 251) (1981). This immunity applies equally to claims in negligence and in nuisance. *Kordares v. Gwinnett County*, 220 Ga. App. 848, 850 (470 SE2d 479) (1996). School districts and boards are entitled to sovereign immunity, and their employees are entitled to official immunity from personal liability for injuries sustained as a result of the negligent performance of discretionary official acts.[1] *Crisp County School Sys. v. Brown*, 226 Ga. App. 800, 802-803 (2) (487 SE2d 512) (1997). "[M]onitoring, supervising, and controlling the activities of students is a discretionary action protected by the doctrine of official immunity. [Cits.]" *Perkins v. Morgan County School Dist.*, 222 Ga. App. 831, 835 (476 SE2d 592) (1996). "The general task imposed on [a principal] to monitor, supervise, and control the movement of large numbers of students during a change in classes . . . necessarily required the exercise of some discretion." *Guthrie v. Irons*, 211 Ga. App. 502, 506 (439 SE2d 732) (1993), disapproved on other grounds, *Gilbert v. Richardson*, 264 Ga. 744, 750 (452 SE2d 476) (1994).

In their original complaint, the Pheils alleged that the handrails had been removed from the stairwell in violation of certain unspecified building codes. But defendants point out that the Pheils relied entirely on the Rehabilitation Act in their reply to defendants' motion for summary judgment below, and did not address any of defendants' contentions concerning sovereign immunity for discretionary acts.[2] Under *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), once a defendant pierces a plaintiff's pleadings as to any element of the case, the plaintiff must respond with evidence to establish a jury issue on that element or suffer judgment.

But assuming without deciding that the Pheils preserved this issue for appeal, and assuming without deciding that the removal or

---

[1] The Pheils do not contend that the principal's decision regarding the amount of time allowed to change class was ministerial in nature.

[2] The Pheils did not present any evidence or argument concerning a missing handrail in their brief or affidavits below, but relied entirely on the school's class change time requirements and their contention that Jessica was pushed or jostled by another student due to the need to hurry between classes. The Pheils appear, albeit indirectly, to raise the issue of the handrail in an affidavit filed for the first time as an attachment to their response to appellants' discretionary application, in which a non-eyewitness claims that Jessica later told her "she reached out to try and grab something to stop her fall, but there was nothing there for her to grab." But this Court cannot consider an affidavit not part of the record below. *Champion Mgmt. Assn. v. McGahee*, 227 Ga. App. 895, 896 (2) (490 SE2d 215) (1997).

failure to install a handrail would constitute a ministerial act outside the scope of the school administrators' official immunity, see *Holloway*, supra, summary judgment was nevertheless demanded under the undisputed facts in this case.

While there was a missing handrail on the stairwell, the undisputed eyewitness testimony shows that it had no causal relation to Jessica's fall. Students who saw the incident uniformly testified that the missing handrail was on the *opposite* side of the stairs from Jessica, who was walking next to a center handrail that was in place. Jessica was talking to a friend who was walking by her side; this friend was between Jessica and the missing handrail, as were a number of other students passing in the opposite direction. Jessica was not holding onto or using the available handrail at the time of her fall.

Under these circumstances, the issue of defendants' liability for a ministerial act is foreclosed by the undisputed facts.

2. The Pheils attempt to avoid the scope of Georgia's sovereign immunity law by making a claim under the Federal Rehabilitation Act of 1973, 29 USC § 794.[3] The Act provides in pertinent part: "No otherwise qualified individual with a disability in the United States, as defined in section 706 (8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 USC § 794 (a).

To state a claim under the Act, a claimant must first show that she is a "qualified individual with a disability," in other words (1) that she has a disability, (2) that she can meet the essential functions as a student despite her disability or with "reasonable accommodation" for her disability, and (3) that the school discriminated against her on account of her disability. Failure to provide reasonable accommodation for a known disability may constitute discrimination. *Ellis v. Morehouse School of Medicine*, 925 FSupp. 1529, 1540 (N.D. Ga. 1996). A claimant in a private cause of action for damages under the Act must show not only that a school district has refused to provide reasonable accommodations for a handicapped student; she must also show intentional discrimination by the defendants. *Scokin v. State of Texas*, 723 F2d 432, 440-441 (5th Cir. 1984). Most importantly, "an academic institution can be expected to respond only to what it knows (or is chargeable with knowing). . . . A relevant aspect of this inquiry is whether the student ever put the . . . school on notice of [her] handicap by making 'a sufficiently direct and spe-

---

[3] On appeal, as on summary judgment below, the Pheils do not address and apparently concede the propriety of summary judgment absent a claim under the Rehabilitation Act.

cific request for special accommodations.' [Cit.]" *Wynne v. Tufts Univ. School of Medicine*, 976 F2d 791, 795 (1st Cir. 1992).

The Pheils allege defendants violated the Rehabilitation Act by failing to accommodate Jessica's disability. They allege defendants should have allowed her additional time to change classes or should have assigned her a locker located near her classrooms. But in order to show a claim under the Act they must support this general contention by showing the essential elements of their claim: (1) that Jessica had a *disability* that affected her capacity to negotiate the school hallways and stairs in the time allowed; (2) that the school was *put on notice* of that disability; (3) that the school *intentionally refused* a *reasonable accommodation* for that disability; and, (4) if all these facts are shown, that a *causal connection* exists between the school's refusal to accommodate the disability and the injury. *Ellis*, *Scokin*, and *Wynne*, supra.

"In response to a properly supported motion for summary judgment which pierces the pleadings, plaintiffs may not stand upon their allegations, but must come forward with evidence to contravene defendants' proof or suffer judgment. *Lau's Corp. v. Haskins*, [supra]." *Bowden v. Pryor*, 215 Ga. App. 351, 352 (450 SE2d 845) (1994). In this case, the Pheils have failed to show the necessary elements of a Rehabilitation Act claim.

(a) The only disabilities demonstrated in the record are Jessica's allergies and resulting migraine headaches. No evidence was presented of any other disability. Moreover, the Pheils have not shown how allergies or headaches created any disability that would have caused difficulty in walking or negotiating stairs, thus requiring accommodation in the area of class changing time or locker location. When Jessica's parents requested that the school evaluate Jessica's status in light of her allergies and headaches, testing revealed that Jessica had no physical handicap and no mental disability or learning dysfunction. Her test scores were normal, although she was having some academic problems in one or two areas. No evidence was presented that she was suffering from allergies or headaches at the time of the fall, which occurred in December.

(b) The school was notified of Jessica's difficulties with allergies and headaches. The Pheils requested accommodation in the areas of absence from school and making up work. But no evidence was presented that Jessica or her parents ever complained to the school of difficulties in moving from class to class, the location of her locker or classes, or time pressures in doing so. Mrs. Pheil acknowledged in her deposition that she did "not to my recollection" complain to the school about the time allowed for changing classes. The school principal testified positively that no such complaint was made by Jessica or anyone on her behalf.

In response to defendants' summary judgment motion, Mrs. Pheil presented an affidavit stating that Jessica complained to *her* of difficulty in moving from class to class. The affidavit also states that the school was well aware of Jessica's headaches and allergies. But this affidavit fails to connect these two facts by showing either the disability's effect on Jessica's ability to change classes or a request *to the school* for accommodation in changing classes. Mrs. Pheil did not testify that she ever notified *the school* that Jessica had difficulty in changing classes or that she requested an accommodation for Jessica in this area.[4]

(c) There appears to be no dispute that the school accommodated Jessica on the only complaint of which the school was made aware: Jessica's allergies and headaches, and her need because of them for accommodation in absences and making up missed work. School officials held a formal meeting with Mrs. Pheil, Jessica's problems and possible solutions were discussed, and a plan was devised to accommodate her absences and make-up work. Mrs. Pheil acknowledged that she met with school officials and reached an agreement that the school would provide remedial help rather than placement in special education. Mrs. Pheil also acknowledged that the agreement was working out up until the time of Jessica's death.

The Pheils appear to contend that once a school is made aware of any disability, a child becomes generally classified as a "disabled child," and the school is thereafter liable under the Rehabilitation Act for any harm that befalls the child, even if that harm is unrelated to the known disability but results from some other disability not disclosed to the school. This is not a correct statement of the law. The Rehabilitation Act clearly requires a claimant to demonstrate that a specific disability existed, that the school was put on notice of the disability by a direct and specific request for special accommodations, and that the school refused a reasonable accommodation. The Pheils have failed to establish these necessary elements of a claim under the Act, and the trial court therefore erred in denying summary judgment to appellants.

*Judgment reversed. Birdsong, P. J., and Beasley, J., concur. McMurray, P. J., disqualified.*

---

[4] But such a statement, even if made, would have contradicted Mrs. Pheil's deposition testimony that she did not recall complaining to the school regarding class changing times, and, if unexplained, would have been construed against her. *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2) (343 SE2d 680) (1986).

DECIDED FEBRUARY 27, 1998 —
RECONSIDERATION DENIED MARCH 12, 1998

*Ellis, Easterlin, Peagler, Gatewood & Skipper, Benjamin F. Easterlin IV, George M. Peagler, Jr.*, for appellants.
*Edward W. Clary*, for appellees.