**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 24, 2021**

# In the Court of Appeals of Georgia

A21A0820, A21A0821. DEKALB COUNTY v. STANLEY; and vice versa.

BROWN, Judge.

Pamela Stanley suffers from neuromyelitis optica, an autoimmune disease that attacks the optic nerve and has rendered her visually impaired. Stanley is considered fully disabled by the Social Security Administration. While walking on a sidewalk in DeKalb County, Stanley tripped and fell in a hole, fracturing her foot. Stanley sued multiple defendants, including DeKalb County and David Pelton, "In his Official Capacity as Director of DeKalb County Public Works Transportation Division," asserting claims for negligence, nuisance, and violation of Title II of the Americans

with Disabilities Act of 1990 (the "ADA"), 42 USC § 12101 et seq.[1] The trial court dismissed Stanley's claims for negligence and nuisance on the ground of sovereign immunity, but denied the County's motion for summary judgment on the ADA claim. In Case No. A21A0820, the County appeals the denial of its motion for summary judgment on the ADA claim. In Case No. A21A0821, Stanley appeals the trial court's dismissal of her negligence and nuisance claims. We reverse in Case No. A21A0820, but affirm in Case No. A21A0821.

*Case No. A21A0820*

*Background Facts/Procedural History.* This Court reviews de novo a grant or denial of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant. *City of St. Marys v. Reed*, 346 Ga. App. 508, 508-509 (816 SE2d 471) (2018). Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Id. at 508. See also OCGA § 9-11-56 (c). "[T]he burden on the moving party may be discharged by pointing out by reference

---

[1] On March 6, 2019, Stanley and Pelton, in his official capacity, filed a consent motion to dismiss Pelton from Stanley's action without prejudice. The trial court granted the motion on March 27, 2019, dismissing Pelton without prejudice and noting that he "shall no longer be listed as [a] party defendant[ ] in this action."

to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case." (Citation and punctuation omitted.) *Ellison v. Burger King Corp.*, 294 Ga. App. 814, 819 (3) (a) (670 SE2d 469) (2008). See also OCGA § 9-11-56 (c).

So viewed, the evidence shows that on May 15, 2016, Stanley and her adult son were walking on the sidewalk on Snapfinger Woods Drive in DeKalb County, heading to the Little Giant Supermarket, when Stanley tripped and fell in a hole/cut-out in the sidewalk, fracturing her foot.[2] Because of her impaired vision, Stanley could not see the cut-out in time to avoid it; Stanley testified during her deposition that she cannot see things until she "get[s] close up" and that while she frequently walked that area and had shopped at Little Giant many times, she had never traversed the portion of the sidewalk where she fell.

Approximately two weeks before Stanley's fall, Dwight Carter, a DeKalb County resident who had narrowly avoided falling into the cut-out in his wheelchair, called the County on May 2, 2016, to complain that the cut-out posed a danger "for anyone, but especially anyone who is disabled." Carter was assured by the County

---

[2] The cut-out measured approximately one foot wide, four feet long, and a few inches deep.

that the cut-out would be fixed. He called six to eight more times to follow-up, and was again told the cut-out would be fixed, but it "still wasn't fixed even three weeks later." A second individual, who saw Stanley's fall, averred that about two weeks before Stanley's fall, she complained about the cut-out to a crew that was mowing grass in the area. The cut-out was not repaired until January 19, 2017, when Peggy Allen, the Deputy Director of Public Works for the County's Road and Drainage Department was made aware of it, apparently as a result of an Open Records Act request made by Stanley in connection with this case.[3] According to Allen, there is

---

[3] The County does not know who made the cut-out, but according to pictometry viewed by Pelton, the cut-out was made sometime between January 2013 and January 2014. The owner of Harkleroad & Assoc., Inc., a civil engineering and land surveying firm, averred that in September 2013, his firm was hired to assist RaceTrac Petroleum in engineering the corner property at Wesley Chapel Road and New Snapfinger Woods Drive. As part of the project, a utility locating firm contracted by RaceTrac performed utility location work at the site including "potholing," a method used to locate utilities underground which includes cutting out parts of the existing sidewalk to visualize the utilities located underneath. On or about September 3, 2013, the utility locating firm potholed a small section of the existing sidewalk, creating the cut-out into which Stanley eventually fell. When the work was finished, the utility locating firm filled in the cut-out with asphalt. It appears, however, that in February 2014, Comcast Cable may have removed the asphalt in order to perform a "cable pull through."

The record reflects that the County could locate only one permit that was issued for this location; that permit was requested in January 2014, and issued to Comcast on February 3, 2014, for boring work which involves digging in the ground on either side of the road and then pushing a cable through from one side to the other. The sketch accompanying the permit did not indicate that Comcast planned to remove any

no required time for the County to respond to reports or requests for repair; the time depends on the number of inspectors available and the number of requests in the queue. Allen testified that "it could be 90 days" and that requests must be triaged based on severity.

Stanley sued a number of defendants seeking only compensatory damages. As relevant to the appeal in Case No. A21A0820, Stanley alleged that the County's negligence in leaving the hazardous cut-out in its public sidewalk violated Title II of the ADA and her rights under the Fourteenth Amendment to the U. S. Constitution, resulting in Stanley's discrimination as compared to other citizens who use the public sidewalk and do not have a disability. The complaint specifically alleged the following:

> Defendant DeKalb County's negligence in leaving such a hazard in its public sidewalk violated Title II of the ADA. . . . In spite of having actual notice of the hazard, Defendant DeKalb County did not repair the cut-out to make it safe for the public to use the sidewalk until 8 months

portion of the sidewalk. David Pelton, the Deputy Director of the Public Works for the County's Transportation Division testified that "[p]eople dig without permits" and that if there is utility digging, the County never sees the actual utility locate notification; the County "presumes if [it has] given [a company] a permit, [the company will] follow state law." The County expects that if a company makes a cut-out in a County sidewalk, they will repair it.

5

after it received actual knowledge of its existence. This unreasonable length of time to repair a known hazard amounts to deliberate indifference by Defendant DeKalb County. . . . DeKalb County maintains a policy of intentional ignorance regarding defects and hazards in their sidewalk, i.e., DeKalb County maintains a policy that it does not inspect their sidewalks actively and relies on a citizen to call in a complaint about a sidewalk before they will repair it. . . . This policy of intentional ignorance amounts to deliberate indifference to the rights of its citizens. . . . This policy of intentional ignorance is particularly hazardous to disabled people like [Stanley] who rely on the county to provide safe, non-hazardous sidewalks for its citizens to use.

The County moved for summary judgment on Stanley's ADA claim. The trial court denied the motion, concluding that there was a question of fact as to whether the absence of (i) a County policy related to inspection of the sidewalks and (ii) a County policy to ensure that third parties excavating sidewalks pursuant to permits granted by the County return the sidewalks to their original condition may have constituted deliberate indifference. The trial court also found that "[w]hile it may have been unreasonable to expect [the County] to have fixed the hole within two weeks of [the first] report, the evidence shows it took another eight months after [Stanley's] fall to

do so, which a jury could find to be evidence of deliberate indifference."[4] The County

appeals this ruling, contending that the trial court erred in denying its motion for

summary judgment for two reasons: (1) Stanley cannot establish that an ADA

violation occurred, as she was not denied meaningful access to a County service as

a result of her disability, and (2) Stanley cannot show that the County intentionally

discriminated against her in violation of the ADA.

*Title II of the Americans with Disabilities Act*. Title II of the ADA provides as

follows: "Subject to the provisions of this title, no qualified individual with a

disability shall, by reason of such disability, be excluded from participation in or be

denied the benefits of the services, programs, or activities of a public entity, or be

---

[4] As to whether Stanley was subjected to discrimination by the County by reason of her disability, the trial court concluded that an issue of fact remained as to whether Stanley was unable to see the cut-out and whether this constituted her exclusion of the ability to safely traverse the sidewalk. In the trial court's judgment, a jury could find that the County failed to satisfy the requirements of the ADA because the risk of falling into an unrepaired hole could disproportionately impact a person like Stanley who is visually impaired as opposed to a person who could see the hole and avoid falling into it. Analogizing this case to *Cohen v. City of Culver City*, 754 F3d 690 (9th Cir. 2014) and *Parker v. Universidad de Puerto Rico*, 225 F3d 1 (1st Cir. 2000), the trial court further found that the County failed to eliminate a barrier that would prevent a visually impaired person from traversing a County sidewalk safely and that the County had an indisputable duty under the ADA to maintain safe sidewalks for those citizens who suffer from a recognized disability.

subjected to discrimination by any such entity."[5] 42 USC § 12132. To state a claim under Title II of the ADA, a plaintiff must establish that: (1) she is a qualified individual with a disability; (2) she was either excluded from participation in or denied the benefits of the services, programs, or activities of a public entity or was otherwise discriminated against by such entity; and (3) such exclusion, denial of benefits or discrimination was by reason of her disability. See *Shotz v. Cates*, 256 F3d 1077, 1079 (II) (A) (11th Cir. 2001) (citing 42 USC § 12132); *K v. City of South Portland*, 407 FSupp.2d 290, 295 (III) (A) (D. Me. 2006).[6] The County is a "public entity" within the meaning of the ADA. See 42 USC § 12131 (1) (A) ("[t]he term 'public entity' means . . . any State or local government"). The County does not dispute that Stanley is a "qualified individual with a disability" under the ADA.

[5] Public sidewalks are "services, programs, or activities" within the meaning of Title II of the ADA. See *Beckley v. City of Atlanta*, No. 1:16-CV-1435-MHC, 2017 WL 6460300, at *3 (III) (B), n.4 (N.D. Ga. October 18, 2017). See also *Barden v. City of Sacramento*, 292 F3d 1073, 1076-1077 (9th Cir. 2002).

[6] In analyzing claims brought under an analogous federal statute, the Rehabilitation Act of 1973, we have relied on federal cases. See *Crisp County School Dist. v. Pheil*, 231 Ga. App. 139, 141-142 (2) (498 SE2d 134) (1998). Moreover, "[g]iven the textual similarities between the [ADA and § 504 of the Rehabilitation Act of 1973], the same standards govern claims under both, and [the Eleventh Circuit] rel[ies] on cases construing Title II and § 504 interchangeably." (Citations and punctuation omitted.) *Silberman v. Miami Dade Transit*, 927 F3d 1123, 1133 (III) (A) (11th Cir. 2019).

In addition, in cases where a plaintiff seeks to recover monetary damages under Title II of the ADA, the plaintiff must show that "the entity [s]he has sued engaged in intentional discrimination, which requires a showing of deliberate indifference." (Punctuation omitted.) *Silberman v. Miami Dade Transit*, 927 F3d 1123, 1134 (III) (A) (11th Cir. 2019), citing *Liese v. Indian River County Hosp. Dist.*, 701 F3d 334, 345, 348 (II) (C) (11th Cir. 2012) (addressing a claim under § 504 of the Rehabilitation Act of 1973, 29 USC § 794). See also *McCullum v. Orlando Regional Healthcare System*, 768 F3d 1135, 1146-1147 (III) (C) (11th Cir. 2014) ("[a] plaintiff may prove discriminatory intent by showing that a defendant was deliberately indifferent to his statutory rights"). Deliberate indifference "is an exacting standard . . . which requires showing more than gross negligence." (Citations and punctuation omitted.) *McCullum*, 768 F3d at 1147 (III) (C). See *Liese*, 701 F3d at 344 (II) (C). See also Americans with Disabilities: Practice & Compliance Manual § 2:217 (May 2021) ("[i]ntentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that the pursuit of its questioned policies will likely result in a violation of federally protected rights"). "It requires proof that the defendant knew that harm to a federally protected right was substantially likely and failed to act on that likelihood." (Citation and punctuation omitted.) *Silberman*, 927

9

F3d at 1134 (III) (A). "Where the substantial likelihood of harm is obvious, a jury may infer that the defendant had actual knowledge of that substantial risk of harm." *McCullum*, 768 F3d at 1147 (III) (C), citing *Farmer v. Brennan*, 511 U. S. 825, 842 (B) (2) (114 SCt 1970, 128 LE2d 811) (1994).

The ADA was "enacted as [an] anti-discrimination statute[ ], not a means by which every injury suffered by a disabled individual [is] subject to redress." *Williams v. California Dept. of Corrections and Rehabilitation*, 2017 WL 6016946, at *3 (E.D. Cal. December 5, 2017). It emphasizes "systematic exclusion," and this "systematic exclusion is underscored by [its] implementing regulations, which make it clear that a violation does not occur every time there is a temporary loss of accessibility[.]" Id. Additionally,

> in order to hold a government entity liable [under the ADA], the plaintiff must demonstrate that an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the entity's behalf had actual knowledge of discrimination in the entity's programs and failed adequately to respond. To qualify, that "official" must be high enough up the chain-of-command that his or her acts constitute an official decision by the entity not to remedy the misconduct.

10

(Citations and punctuation omitted.) *Silberman*, 927 F3d at 1134 (III) (A). See also

*Beckley v. City of Atlanta*, No. 1:16-CV-1435-MHC, 2017 WL 6460300, at *8 (III)

(D) (N.D. Ga. October 18, 2017). In this case, Stanley seeks compensatory damages;

accordingly, the deliberate indifference standard applies to her ADA claim. See

*Martin v. Halifax Healthcare Systems*, 621 Fed. Appx. 594, 601 (II) (B) (11th Cir.

2015) ("to recover compensatory damages, [p]laintiffs must show that the exclusion

or denial was the result of intentional discrimination").

*Analysis*. Pretermitting the question of whether Stanley was subjected to

discrimination by the County by reason of her disability, she is unable to prove that

the County acted with the deliberate indifference required to sustain her claim for

compensatory damages under the ADA. See, e.g., *K*, 407 FSupp.2d at 295-296 (III)

(A) (granting summary judgment to defendants on ADA claim where plaintiff could

not prove deliberate indifference for failure to provide accessible sidewalk based

upon icy patch). Stanley contends that the County's act of not repairing the sidewalk

to make it safe for the public until eight months after it received actual knowledge of

its existence amounts to deliberate indifference. She also claims that the County

maintains a policy of intentional ignorance regarding defects and hazards in its

sidewalks which amounts to a deliberate indifference to the rights of its citizens,

11

particularly disabled persons who rely on the County to provide safe sidewalks. In this regard, Stanley points to the fact that the County "maintains a policy that it does not inspect [its] sidewalks actively and relies on a citizen to call in a complaint about a sidewalk before [the County] will repair it." The County points out, however, that there is no evidence in the record that the County knew that harm to a federally protected right was substantially likely and failed to act on that likelihood or that an appropriate "official" within the County had actual knowledge of discrimination in the County's programs and failed to adequately respond.

The record reflects that the cut-out was reported to the County 13 days before Stanley's fall, but that it was not filled until mid-January, 2017, when Allen, the Deputy Director of the Public Works for the County's Road and Drainage Department, was made aware of it. The trial court concluded that a question of fact remained as to whether the County's lack of sidewalk inspection procedure may have constituted deliberate indifference. In making that determination, the trial court highlighted that the County did not repair the sidewalk until eight months after Stanley was injured. The trial court's conclusion is erroneous for several reasons.

First, the mere absence of a sidewalk inspection procedure does not show that the County (i) knew of a substantial likelihood that a federally protected right would

12

be violated and (ii) made a deliberate choice not to act on that likelihood. Cf. *McCullum*, 768 F3d at 1147-1148 (III) (C). In *T. W. ex rel. Wilson v. School Bd. of Seminole County, Fla*., 610 F3d 588 (11th Cir. 2010), a case alleging violation of section 504 of the Rehabilitation Act, the Eleventh Circuit found that the plaintiff could not prove that the defendant school board knew that harm to a federally protected right was substantially likely and that the defendant failed to act on that likelihood. Id. at 604 (III) (B). In reaching that conclusion, the Circuit Court determined that the record established that the school board investigated all complaints of abuse lodged against the plaintiff's teacher and was unable to substantiate them. Id. Implicit in this determination is the following corollary: That a failure to address substantiated claims of abuse would be sufficient to prove the defendant knew that harm to a federally protected right was substantially likely and that the defendant failed to act on that likelihood.

In this case, Stanley has provided no evidence that the County eschews a sidewalk repair policy in order to discriminate against persons with disabilities or that the County receives numerous and repeated complaints about problems with its sidewalks to which it does not respond or that go intentionally ignored. See *Ferguson v. City of Phoenix*, 157 F3d 668, 675 (9th Cir. 1998) (affirming grant of summary

13

judgment to City in hearing-disabled plaintiffs' suit alleging that City operated its 911 emergency service in a discriminatory way on the ground that City's actions did not amount to deliberate indifference towards the plaintiffs, but rather, "not uncommon bureaucratic inertia"). Cf. *Davis v. Monroe County Bd. of Educ.*, 526 U. S. 629 (119 SCt 1661, 143 LE2d 839) (1999) (reversing grant of motion to dismiss in action under Title IX where plaintiff alleged months-long pattern of sexual harassment against her daughter and multiple other female students which was reported to principal who did nothing and county school system had no established policy in place for responding to peer sexual harassment).[7] That Stanley has offered evidence of an issue with one sidewalk in the County's jurisdiction does not prove that the County's established policy of relying on citizen complaints proves that it acted with deliberate indifference. Here, Stanley has presented no evidence of problems with other sidewalks within the County's jurisdiction. Accordingly, she cannot show that the County's citizen-driven reporting policy "amounts to a deliberate indifference to

---

[7] Although *Davis* involves a claim under Title IX of the Education Amendments of 1972, at least three Circuit Courts "have applied *Davis*'s framework to [claims under the ADA and § 504] . . . because the statutory language in Title IX . . . parallels the language in the Rehabilitation Act and the ADA." (Citations omitted.) *Vargas v. Madison Metro. School District*, No. 18-CV-272-slc, 2019 WL 2173928, at *4 (II) (A) (W.D. Wis., May 20, 2019).

the rights of its citizens." Expecting the County to inspect every sidewalk within its jurisdiction when there is no evidence — save an issue with one sidewalk — that its reliance on citizen reporting is inadequate does not show deliberate indifference.

Second, as other courts have indicated, the ADA is intended to prevent consistent and discriminatory denial of access; isolated or temporary interruptions in public services are not violations of the ADA. See *Pack v. Arkansas Valley Correctional Facility*, 894 P2d 34, 38 (II) (Colo. App. 1995) (plaintiff's claim under ADA that ice and snow accumulation in handicapped parking zone denied him access to correctional facility properly dismissed on the ground that the ADA "was not intended to create a remedy for a claim based on an isolated act of simple negligence"). Cf. *Lawson v. City of Atlanta*, 2019 WL 3539816 (N.D. Ga. July 10, 2019) (denying motion to dismiss in class action brought by disabled plaintiffs, alleging *systemic* failures on the part of the City to comply with the ADA's requirements to make sidewalks accessible to those with mobility impairments).

Third, and contrary to the trial court's conclusion, the relevant time frame is not the eight months following Stanley's fall, but the thirteen days before her fall. As set out above, deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood. See

15

*Silberman*, 927 F3d at 1134 (III) (A). By definition, the County's acts/omissions *after* the incident at issue cannot support a claim under the ADA. See *Davis*, 526 U. S. at 642-643 (II) (A) (noting in Title IX case that deliberate indifference must "cause[ ] the discrimination") (citation and punctuation omitted). See also *K. C. v. Marshall County Bd. of Educ.*, 762 Fed. Appx. 226, 232 (II) (B) (6th Cir. 2019) (concluding in case alleging claims under the ADA and § 504 that "post-complaint faults that plaintiff alleges in the [defendant's] handling of his complaint . . . cannot constitute deliberate indifference because, even assuming those actions were deficient, they did not cause [plaintiff] to suffer any further abuse"). In this case, while a delay of 13 days to undertake repair of the cut-out might amount to negligence or even gross negligence, it does not rise to the level of deliberate indifference required to sustain a claim for damages under the ADA. See *Liese*, 701 F3d at 344 (II) (C) ("deliberate indifference plainly requires more than gross negligence"). See also *Ferguson*, 157 F3d at 675 ("bureaucratic inertia" does not amount to the deliberate indifference or discriminatory animus required to sustain claim under the ADA).

Fourth, there is no evidence that an "official" within the County had actual knowledge of the open cut-out until January 2017, almost eight months after Stanley's fall. While a County *employee* had knowledge of the open cut-out 13 days

16

prior to Stanley's fall, there is no evidence that this notice was provided to "an official" within the County who "retains substantial supervisory authority." *Lavandeira v. Tampa Police Dept.*, 2020 WL 6545983, at *4 (I) (B) (M.D. Fla. November 6, 2020) (iterating that plaintiff seeking damages under ADA and/or § 504 "must allege sufficient facts to establish that [the defendant] official's decision or action constitutes an official decision by [the defendant] itself not to remedy the alleged discrimination") (citations and punctuation omitted), citing *Liese*, 701 F3d at 350 (II) (D). In fact, once Allen, the Deputy Director of the Public Works for the County's Road and Drainage Department, became aware of the cut-out, it was immediately repaired. Moreover, there is no evidence that officials within the County were on notice of any discriminatory incidents resulting from the County's citizen-reporting policy which were ignored.

According to Stanley, there is ample evidence from which a jury could infer that the County "actually had knowledge of this cut-out back in September 2013[,] when Harkleroad requested they attend a site visit"; Stanley claims that instead of attending the site visit, however, a senior engineer with the County "arrogantly" replied in an email on which Pelton was copied, "[l]ooking at your site plan, I don't see any obvious conflicts with our traffic signal equipment so no need for us to

attend." But, both Pelton, the Deputy Director of the Public Works for the County's Transportation Division, and Allen, the Deputy Director of the Public Works for the County's Road and Drainage Department, testified that if the County permits a company to perform utility cuts, the company is also expected to repair the cut. Moreover, the record reflects that at the time the site visit offer was made on October 21, 2013, to the County's Transportation Division, which has no control over sidewalks, the cut-out had been filled by the utility locating firm. Accordingly, Stanley's assertion that the County's response to Harkleroad and/or its failure to attend a site visit amounted to deliberate indifference on the part of the County towards disabled persons like Stanley is without merit. Cf. *Beckley*, 2017 WL 6460300, at *8 (III) (D) (granting City's motion for summary judgment on plaintiff's claim for compensatory damages under the ADA where plaintiff failed to produce evidence "from which a jury could conclude that any specific person (or persons) [with supervisory authority] was deliberately indifferent to her needs").

In support of her claim that the County's "head-in-the-sand policy" amounts to deliberate indifference and violates the ADA, Stanley cites to several cases where courts have concluded that facially neutral policies violate the ADA when such policies unduly burden disabled persons. But, all of the cases relied on by Stanley

18

involved claims for "reasonable accommodation" or meaningful access, and reasonable modification; none considered whether a government or municipal policy or lack thereof constituted deliberate indifference and only one involved a plaintiff seeking compensatory damages. See *McGary v. City of Portland*, 386 F3d 1259, 1265 (2) (9th Cir. 2004) (plaintiff adequately stated claim under Title II of the ADA when he alleged that city failed to reasonably accommodate his disability by denying him additional time to comply with nuisance abatement policy; noting that Ninth Circuit has "repeatedly recognized that facially neutral policies may violate the ADA when such policies unduly burden disabled persons, even when such policies are consistently enforced"); *Martin v. PGA Tour, Inc*., 204 F3d 994 (9th Cir. 2000) (allowing professional golfer to use golf cart during tournament reasonable accommodation); *Crowder v. Kitagawa*, 81 F3d 1480 (9th Cir. 1996) (reversing grant of summary judgment and remanding for district court to determine whether plaintiffs' — class of visually impaired persons who use guide dogs — proposed modifications to State of Hawaii's 120-day quarantine policy are reasonable under the ADA); *Cooley v. City of Los Angeles*, 2019 WL 3766554 (C.D. Cal. August 5, 2019) (disabled unhoused plaintiffs adequately stated claim for reasonable accommodation under ADA when they alleged that city seized and destroyed their property without

19

allowing them extra time to gather their belongings before performing sidewalk cleaning).

While Stanley is correct that public entities may be liable for a failure to make a reasonable modification to their policies, practices, or procedures to avoid discrimination on the basis of a disability, Stanley has not asserted a claim for reasonable modification. Cf. *Siskos v. Secretary, Dept. of Corrections*, 817 Fed. Appx. 760, 764 (11th Cir. 2020) ("[p]ublic entities must make reasonable modifications to their policies . . . when necessary to avoid discrimination on the basis of a disability unless making the modifications would fundamentally alter the nature of the services, programs, or activities") (citation and punctuation omitted). Moreover, she has not pointed out a specific case where the lack of a policy alone amounts to deliberate indifference. Similarly, to the extent Stanley is arguing that the incident would not have happened if the County had adopted and implemented a more proactive sidewalk inspection policy, we find this contention speculative and unsupported by any evidence in the record. As indicated previously, Stanley has failed to point to any other incidents of substantial similarity where the County's alleged "head-in-the-sand" sidewalk policy has resulted in the denial of access to the sidewalks or discrimination on the basis of individuals' disabilities. Lastly, to the

20

extent Stanley is requesting that the County have such a policy in place in order to avoid discrimination on the basis of a disability, she has neither made such a request to the County nor asserted such a claim in her complaint for damages. Compare *Nat. Federation of the Blind v. Lamone*, 813 F3d 494 (4th Cir. 2016) (blind plaintiffs fulfilled obligation to show their proposed modification to Maryland's absentee voting program to enable them to vote electronically was reasonable); *Beckley*, 2017 WL 6460300, at *1 (disabled plaintiff sought order requiring the City to make "'reasonable modifications'" to an intersection so it could be accessed by disabled individuals using wheelchairs). For the foregoing reasons, we conclude that Stanley has failed to establish the deliberate indifference required to sustain a claim for compensatory damages under the ADA. Accordingly, we reverse the trial court's denial of the County's motion for summary judgment on this claim.

### Case No. A21A0821

In addition to asserting a claim under the ADA, Stanley also alleged that the condition of the sidewalk constituted a public nuisance under OCGA §§ 41-1-1, 41-1-3, for which the County was liable, and that the County and Pelton in his official capacity were liable for negligence per se and negligence. The trial court dismissed the negligence claims, concluding that Stanley had not shown or even alleged that the

21

County had waived its sovereign immunity as to the claims, and that because Pelton was acting in his *official capacity*, Stanley's claims against Pelton are claims against the County, which also have not been waived.[8] The trial court also dismissed the nuisance claim, concluding that sovereign immunity bars an action for personal injury against a county arising from nuisance. Stanley appeals these rulings. We review de novo the trial court's rulings granting the motions to dismiss. See *Beasley v. Ga. Dept. of Corrections*, ___ Ga. App. ___ (Case No. A21A0593, decided June 22, 2021).

1. Stanley contends that the trial court erred in dismissing her negligence claims because the County and Pelton violated a ministerial duty and are, therefore, not entitled to official immunity. Stanley contends that this case "turns solely on whether [Pelton] — a public works director for the traffic division, employed by DeKalb County, violated a ministerial duty imposed by the policies and training that he was required to follow." Stanley's enumeration of error is moot and entirely

---

[8] The trial court noted that Stanley's First Amended Complaint appeared to assert a claim against Pelton in his individual capacity, but that Stanley had neither sought to add Pelton individually nor did she amend the style of the case to indicate that Pelton was being sued in his individual capacity. Regardless, five months after the trial court issued this order, it granted Stanley's and Pelton's consent motion dismissing Pelton from the case without prejudice and noting that he "shall no longer be listed as [a] party defendant[ ] in this action."

without merit for two reasons. First, Stanley has no claims pending against Pelton. Stanley never properly asserted an individual capacity claim against Pelton, and in fact she consented to Pelton's dismissal as a defendant from this action; accordingly, no claims remain pending against him. Second, the doctrine of "official immunity," which Stanley contends applies to mandate reversal of the trial court's order dismissing her negligence claim against the County, is a defense for public officers and employees sued in their individual capacity; it is not applicable to counties. See *Klingensmith v. Long County*, 352 Ga. App. 21, 23 (1) (833 SE2d 608) (2019) ("[s]overeign immunity is the immunity provided to governmental entities and to public employees sued in their official capacities[;] [o]n the other hand, the doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity") (citation and punctuation omitted). To the extent Stanley is arguing that the proper maintenance of the sidewalk is a ministerial duty — as opposed to a governmental function — subjecting the County to liability for negligence, there is no merit to this argument. See *Rutherford v. DeKalb County*, 287 Ga. App. 366, 367 (1) (a), (b) (651 SE2d 771) (2007) (distinction between governmental and ministerial/proprietary functions

23

applies to cities, not counties). It follows that the trial court properly dismissed Stanley's negligence claims.

2. Stanley contends that the trial court erred in dismissing her nuisance claim because the County "has no immunity for a nuisance that violates a citizen's constitutional rights." This enumeration also is without merit.

"Sovereign immunity protects all levels of governments from legal action unless they have waived their immunity from suit. Any suit against the State that is barred by sovereign immunity is subject to dismissal under OCGA § 9-11-12 (b) (1) for lack of subject-matter jurisdiction." (Citations, punctuation, and footnotes omitted.) *Gwinnett County v. Ashby*, 354 Ga. App. 863, 864 (842 SE2d 70) (2020). Sovereign immunity applies equally to counties. See id. A county's "[s]overeign immunity is only waived by an act of the General Assembly specifically providing for waiver and delineating the extent of that waiver." (Footnote omitted.) Id. at 864-865. See also OCGA § 36-1-4 ("[a] county is not liable to suit for any cause of action unless made so by statute"); *Bd. of Commrs. of Glynn County v. Johnson*, 311 Ga. App. 867, 869 (1) (717 SE2d 272) (2011) ("[a]s provided in Georgia's Constitution, sovereign immunity extends to the counties, and a county's sovereign immunity can only be waived by an Act of the General Assembly which specifically provides that

24

sovereign immunity is thereby waived and the extent of such waiver") (citation and punctuation omitted). "Normally, a county is not liable to suit for any cause of action unless made so by statute. This includes actions brought under a theory of negligence as well as actions brought under a theory of nuisance, unless, of course, the alleged nuisance amounts to a taking of private property for public purposes." (Citation and punctuation omitted.) *Davis v. Effingham County Bd. of Commrs.*, 328 Ga. App. 579, 582 (1) (760 SE2d 9) (2014). See also *Gatto v. City of Statesboro*, ___ Ga. ___ (2) (Case No. S20G0651, decided June 21, 2021) (explaining that the "'nuisance exception' is a misnomer, and it is more apt to refer to the 'nuisance doctrine' when evaluating whether municipal liability may be imposed in a given case"). "Sovereign immunity bars any action for personal injury or wrongful death against a county arising from nuisance or inverse condemnation." (Citations and punctuation omitted.) *Rutherford*, 287 Ga. App. at 369 (2). In this case, Stanley is alleging personal injuries, not a taking of private property via a public nuisance. Accordingly, the trial court properly dismissed her nuisance claim against the County. See *Johnson*, 311 Ga. App. at 871 (1) (c).[9]

---

[9] While Stanley acknowledges that sovereign immunity bars any action for personal injury or wrongful death against a county arising from nuisance or inverse condemnation, she invites us to make an exception when a violation rises to the level

25

*Judgment in Case No. A21A0821 affirmed; judgment in Case No. A21A0820*

*reversed. Doyle, P. J., and Reese, J., concur.*

---

of a constitutional deprivation of liberty and equal protection. But, the Georgia Supreme Court has made clear that "only the General Assembly has authority to enact a waiver of sovereign immunity, judge-made 'exceptions' are unauthorized and have no validity." *Gatto*, ___ Ga. at (2), citing *Ga. Dept. of Nat. Resources v. Center for a Sustainable Coast, Inc.*, 294 Ga. 593, 599-600 (2) (755 SE2d 184) (2014).

26